Abraham CHERRY, et al., Appellants,

v.

VICTORIA EQUIPMENT & SUPPLY, et al., Appellees.

No. C2999.

Court of Appeals of Texas, Houston (14th Dist.).

July 8, 1982.

Larry Doherty, Doherty, Vela, Poser, Sears & Collins, David C. Redford, Hughes, Watters, Askanase & Redford, Houston, for appellants.

Larry Funderburk, Houston, for appellees.

Before MILLER, MORSE and JAMES, JJ.

MORSE, Justice.

This is an appeal from a summary judgment. The question before us is whether the appellants, Abraham Cherry and Albert Allison, met their burden of establishing a fact issue as to estoppel of appellees to assert the defense of limitations. We find that no such fact issue was raised and affirm the judgment of the trial court.

This suit arose from personal injuries suffered by Abraham Cherry and Albert Allison on October 17, 1976, when gas vented from a well ignited and severely burned appellants. Appellant Abraham Cherry, filed suit on July 14, 1977, and the appellant Albert Allison filed suit on August 24, 1978; neither appellant named Victoria Equipment & Supply Company, Inc. or Victoria Equipment & Supply Company, a partnership, as a defendant at that time. On September 6, 1978, the attorney for appellant Cherry took the deposition of the defendant Melvin Klotzman. Mr. Klotzman was the supervisor of operations on the well at which appellants had been burned and when asked who had reported the fire to him he testified at page 19–20:

Q   An instantaneous fire?  Who reported this to you?

A   The lease pumper.

Q   Whose name is what?

A   His name was Joe Preite.

Q   How do you spell it so we have it correct?

A   P-r-e-i-t-e.

Q   Who did he work for?

A   Victoria Equipment and Supply. They were the Contractor furnishing the pumpers.

Q   Where are they located?

A   Victoria.  Their involvement is the maintaining charts of *producing* wells.  [emphasis added] *

Q   Were they working on this well?

A   No.

Q   Had they been hired to do any work on this well?

A   No.

Q   What other companies, entities or persons other than Vitol Resources, Melvin Klotzman, R & S Well Services, had any work, duty, responsibility or connection with the operation of this well other than the employer of Mr. Cherry whom I understand was cleaning out a tank on the well?

A   The production of the well?

Q   Had anything to do with the well.

A   Are you referring to the work first began, are you referring to from 1973 or the work-over operation?

Q   The work-over.

A   "Vitol" Tools.

Q   What was their job?

A   Wire line—

Q   What do you mean?

A   Wanted the hole wired, shift things, fish things out.

Q   Were they doing actual work on this well.

A   No one was working on the well.

Q   Was there anybody—was supposed to be at that time?

* Note particularly this and other references distinguishing producing wells from those not producing at the time and, accordingly, not included in charges on fixed-fee basis (asterisks used for correlation).

A  Nothing—nothing—the well was being tested or evaluating the well.

Q  Who was testing or evaluating?

A  No one was present because it wasn't necessary.

Mr. Preite's responsibilities at the well site as well as his employment by Victoria Equipment & Supply Company were further clarified on page 31 of the deposition when Mr. Klotzman stated:

A  The only person that I talked to on the thing other than the Mac Services man was the pumper who informed me of the fire and wanted to know what was going on because the gate was open, and I called Mac Services and found out what was going on in relation to the vacuum truck to the— to the Borchers. He shut the well in. He found cigarettes and either one or two lighters in the tank. I can't remember.

Q  Who was this?

A  Name was Joe Preite, P-r-e-i-t-e, as I've stated before.

Q  And who did he work for?

A  Victoria Equipment and Supply as I stated before.

MR. VAN WINKLE: He's the pumper?

A  Pumper.

Q  (By Mr. Doherty) When did he come on the premises?

A  He worked from 7:00 to 3:00—7:00 to 4:00 every day, I suppose, checking the well's production, the compressors, water systems, the leaks, salt water leaks, well, sanding up, so forth.

Q  Who paid for his work effort on that job?

A  Victoria Equipment was his direct employer, but he was billed by them to Vitol Resources.

After asking more about Victoria Equipment and Supply at page 59 and learning that it was a company half owned by Klotzman, on page 62 of the deposition Mr. Cherry's lawyer once again returned to the subject of Mr. Preite, at which time Mr. Klotzman testified:

Q  Now, the guy, Preite, that you previously—

A  I never could pronounce his name.

Q  I can't either. He worked for a company that you owned a part of?

A  Right.

Q  But you had hired him, too?

A  He had nothing to do with the well.

Q  He was working on some other wells that day?

A  He was working on eighty-nine—on other wells that day.

Q  Did you invoice Vitol for his services that day?

A  No.

Q  Was he working for—

A  Let me say this: Let me qualify it, give you a better interpretation. Vitol Resources are billed on the basis of producing wells—number of *producing* wells for a fixed fee. [emphasis added] *

No further questions were asked about Mr. Preite or about Victoria Equipment and Supply Company at that deposition. Also, there was no showing by appellants that they made further investigation into Victoria Equipment & Supply Company's involvement with the well prior to the running of the two year statute of limitations.

The deposition of Joe Preite was not taken until eighteen months later on March 4, 1980. At this time appellants' attorneys obtained what they say was further information which led them to amend their pleadings to join Victoria Equipment and Supply Company as a defendant. [We will hereinafter compare what had been told them in 1978 with what they were told in 1980].

The appellant Abraham Cherry joined appellee Victoria Equipment & Supply Company, Inc. as a defendant on March 11, 1980 and the appellant Albert Allison joined the appellee Victoria Equipment & Supply Company, Inc. on March 12, 1980. The Cherry and Allison cases were consolidated on January 9, 1981. The appellee Victoria

Equipment & Supply Company, Inc. on January 23, 1981 filed a motion for summary judgment on the grounds that the appellants' cause of action was barred by the two year statute of limitations and that the appellee, Victoria Equipment & Supply Co. Inc., was not in existence at the time of the accident, but was only incorporated on June 4, 1979. An affidavit of Mr. Klotzman filed February 27, 1981, shows the corporation assumed the liabilities of the predecessor partnership. The appellants opposed appellees' motion for summary judgment on the ground that appellees were estopped from relying on the defense of limitations because the testimony of Mr. Klotzman in his deposition was calculated to mislead the appellants. They oppose the defense on the basis that Mr. Klotzman fraudulently concealed the existence of causes of action against appellees. Abraham Cherry amended his pleadings to join as a defendant Victoria Equipment & Supply Company, a partnership, on March 26, 1981 and Albert Allison amended his pleadings to join Victoria Equipment & Supply Co., a partnership, on April 8, 1981. The appellee Victoria Equipment & Supply Co., a partnership, filed a motion for summary judgment on May 27, 1981 and on May 28, 1981 a summary judgment was entered in favor of both appellees.

The appellants have come before this Court with a single point of error. They contend that the trial court erred in entering the summary judgment in favor of appellees because a fact issue was raised in the trial court as to whether Melvin Klotzman fraudulently concealed the causes of action against appellee Victoria Equipment & Supply Co., Inc. and its predecessor partnership.

■ The nature of fraudulent concealment was well stated in *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974), in which the Texas Supreme Court wrote:

When the defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the one to whom it belongs, the guilty party will be estopped from relying

on the defense of limitations until the right of action is, *or in the exercise of reasonable diligence should be, discovered.* [Emphasis added].

Since fraudulent concealment is an affirmative defense to the statute of limitations, the burden is upon the plaintiff in a summary judgment proceeding to present evidence that raises a fact issue as to this defense. It is not sufficient for the plaintiff to merely allege that he was misled.

In the case presently before us, appellants' attorneys were given in Mr. Klotzman's 1978 deposition sufficient facts to raise the question as to whether they had a cause of action against the appellees. As to the detailed nature of the work which was being performed by appellees, appellants attorneys were informed that the man Joe Preite worked for Victoria Equipment and Supply and that "[h]e worked from 7:00 to 3:00—7:00 to 4:00 everyday, I suppose, checking *the well's production,* the compressors, water systems, the leaks, salt water leaks, well, sanding up, so forth." [emphasis added].*

■ Appellants assert that Mr. Klotzman lied when he testified, as to Joe Preite and Victoria Equipment and Supply, that they were not "working on this well" or "hired to do any work on this well." They say this was concealment which should estop appellees' pleas of limitations. However, these answers, when read in context of the entire deposition, indicate that Mr. Klotzman was attempting to point out that although they were the "pumpers" who had checked all of the wells' production and performed related functions, Joe Preite and Victoria Equipment and Supply Company were not working on the particular well at the time of the explosion, since the well was not *"producing."* * This well had been shut down for reworking operations completed by others and then was being "evaluated," and "no one was working on the well" at that time. The mere showing by appellants that Mr. Klotzman's answers could have been misleading is not sufficient. The Texas Supreme Court held in *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952):

Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel. The testimony in the case presently before us was susceptible of two constructions and if there was ambiguity, the attorney should have resolved it. The attorney pursued the matter more than once in later questions even after being given answers which are now said to have amounted to misleading concealment. The witness said that "no one was working on the well" when asked who "had *anything to do with* the well" and if they were doing "*actual* work on this well." In clarification, the "work-over" operation was distinguished from the operation for *production*.* It was explained that since the well was being tested or evaluated, "no one was present because it wasn't necessary." Having undertaken such clarifying distinctions and having received such additional details to put previous answers in context, appellant's attorney cannot say he relied on a misrepresentation by the witness, as to which he interrogated further and received or should have further elicited information to obtain a full understanding of the context of the previous answers. He is charged with knowledge of what complete questioning would have brought out.

The information which led appellants to amend and join appellees in the suit was that appellants claim that Mr. Klotzman's testimony "sharply contrasts" with Mr. Preite's later testimony that:

We were—well, Melvin and them had the wells contracted for gauging, and we would take care of the wells. We would gauge the wells, check the gas flow and stuff and make out reports and we'd send them to his office and then they'd send off to the different companies involved.

This "further information" that they had *the wells* contracted for gauging, etc. does not show anything not previously stated by Mr. Klotzman. The party seeking to apply the doctrine of fraudulent concealment must show that he exercised reasonable care and diligence in seeking to learn the facts that would disclose the fraud. The statute of limitations will be tolled only for one who remained ignorant through no fault of his own. *See Humphrey v. J.B. Land Company,* 478 F.Supp. 770 (S.D.Tex. 1979). The testimony of Mr. Klotzman was sufficient to give appellants notice that they might have a cause of action against appellees. At the very least the circumstances should have caused an experienced lawyer to seek out earlier than was done additional information as to any possible liability of Victoria Equipment and Supply Company. We hold that appellants failed to raise the issue of fraudulent concealment since there was no showing of the exercise of reasonable diligence in discovery. The summary judgment entered by the trial court is accordingly affirmed.

JAMES, Justice, dissenting.

I respectfully dissent from the majority of this panel. This dissent is in complete agreement with the majority's presentation of the facts of this case. The majority sustains the summary judgment granted by the trial court. I disagree. A summary judgment should be granted only when there is no dispute of fact.

The deposition of the defendant Klotzman gives rise to a claim that Klotzman concealed the existence of this cause of action against Victoria Equipment and Supply Company. Victoria Equipment and Supply Company was partly owned by Klotzman. This concealment would estop the appellee from urging the statute of limitation. Because fact issues exist, a summary judgment should be denied. Therefore, I would reverse and remand.